UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADAM CAMPBELL,<br><br>                Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                Defendant. | Case No. C14-1656-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Adam Campbell appeals the ALJ's written decision finding him not disabled. He contends the ALJ failed to assess all of his severe impairments, and misevaluated his testimony and the medical opinions of treating physicians George Moore, M.D., and James Vandermeer, M.D. Dkt. 19 at 1-2. The Court agrees. The record establishes that Mr. Campbell suffers from numerous endocrine disorders. The ALJ committed harmful error by failing to discuss all of these disorders, and the combined effect these disorders might have on Mr. Campbell's functioning. Accordingly, as discussed below, the Court recommends the Commissioner's final decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

REPORT AND RECOMMENDATION - 1

## BACKGROUND

Mr. Campbell is currently 41 years old and has worked as a technical support specialist, user-support analyst, network control operator, and security officer. Tr. 80. In April 2012, he applied for Disability Insurance Benefits, alleging disability as of November 1, 2008. Tr. 94. His application was denied initially and on reconsideration. Tr. 103, 116. The ALJ conducted a hearing on April 17, 2013, finding Mr. Campbell not disabled. Tr. 18-32. The Appeals Council denied Mr. Campbell's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1-5.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found Mr. Campbell last worked in November 2008; that status post lumbar spine laminectomy/discectomy, diabetes insipidus, sleep apnea, Addison's disease, depression and somatoform disorder were severe impairments; and that none of these impairments met or equaled there requirements of a Listing.[2] Tr. 20-22. The ALJ found Mr. Campbell had the Residual Functional Capacity ("RFC") to perform light work subject to the following limitations: He could stand and walk for two hours and sit for six hours of an eight hour workday; He could perform work indoors for convenient bathroom access; He could never climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; He could work in an environment without concentrated exposure to vibrations or hazards; and he could understand, remember, and carry out work that permitted regular breaks. Tr. 22-3. A Vocational Expert ("VE") testified that with this RFC, Mr. Campbell could perform his past relevant work as a user support analyst, and that he could also perform other jobs that existed in the national economy. Tr. 30-1.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

## DISCUSSION

**A.     The ALJ committed harmful error at step-two**

At step-two, the ALJ found that post-lumbar spine laminectomy/discectomy, diabetes insipidus, sleep apnea, Addison's disease, depression and somatoform disorder were severe impairments. Tr. 20. Mr. Campbell contends the ALJ erred by failing to find panhypopituitarism/hypopituitarism, hypothyroidism, hypogonadism, and growth hormone deficiency were also severe impairments. Dkt. 19 at 2-5.

Mr. Campbell had the burden of making a threshold step two, showing that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c).  An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1508.  An impairment is deemed "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).

There is no dispute that Mr. Campbell's panhypopituitarism/hypopituitarism, hypothyroidism, hypogonadism, and growth hormone deficiency are medically determinable impairments.  These conditions were diagnosed by medical doctors, and the Commissioner does not argue otherwise.  The Commissioner, however, argues the Court should affirm the ALJ's step-two findings on the grounds the ALJ properly found that only two of Mr. Campell's endocrine disorders limited his ability to perform work activity, and thus found that the other disorders were non-severe. Dkt. 20 at 3.  This argument is not supported by the ALJ's written decision.  Without comment, the ALJ found that diabetes insipidus and Addison's disease were

severe impairments. Tr. 20. The ALJ gave no explanation as to why only these two endocrine disorders were severe, did not address the other disorders, and made no findings that the other endocrine disorders were non-severe. Tr. 20. Thus, the Commissioner's claim that the ALJ actually considered all of Mr. Campbell's endocrine disorders and found only two were severe is not supported by the ALJ's written decision.

In fact, the ALJ's decision cuts the other way. The ALJ did not acknowledge the additional endocrine disorders, other than making a reference to Mr. Campell's "panhypopituitarism" and mentioning that his hypothyroidism was controlled. Tr. 27, 28. While the ALJ "need not discuss *all* evidence presented," she "must explain why significant probative evidence has been rejected." *Vincent o/b/o Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (internal citation omitted). In this case, as the ALJ did not discuss several endocrine disorders that were diagnosed[3] by Mr. Campbell's long-term, treating, physicians, the Court cannot meaningfully review the decision. *See Id*. Instead, the Court is left with a decision that provides no basis to assess whether the ALJ appropriately considered the impact of these interrelated disorders on Mr. Campbell's capacity to work.

The Commissioner also argues the ALJ's failure to discuss every endocrine disorder was harmless error because the ALJ resolved step-two in Mr. Campbell's favor by continuing the sequential disability evaluation process. Dkt. 20 at 3. It is true that errors committed at step-two are sometimes harmless because the step-two inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). But, *Smolen v. Chater* also shows that an ALJ's failure to consider all severe impairments can rise to the level of harmful error requiring reversal. *Id*.

---

[3] Tr. 20-22, 27-28.

REPORT AND RECOMMENDATION - 4

In *Smolen*, the ALJ found the claimant suffered from just one severe impairment. *Id*. This finding "ignored substantial and undisputed evidence" of other impairments and "failed to consider how the *combination* of those impairments affected Smolen's ability to do basic work activities." *Id*. The Court accordingly found the ALJ erred in assessing Ms. Smolen's additional impairments, emphasizing the step two requirement that "the ALJ must consider the combined effect of all the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Id*. Ms. Smolen's combination of impairments constituted more than a slight abnormality that had no more than a minimal effect on her ability to work, which proved severity at step two. *Id*. "Thus, the ALJ's finding that Smolen suffered only one severe impairment—and implicitly, that the combination of her other impairments was 'not severe'—is not supported by substantial evidence." *Id*.

As in *Smolen*, the ALJ in this case acknowledged only some of Mr. Campbell's endocrine disorders as severe; In doing so, the ALJ obviously failed to consider how Mr. Campbell's other endocrine disorders either singly or in combination affected his ability to perform gainful work activity. In other words, by limiting her assessment to only Addison's disease and diabetes insipidus, the ALJ did not account for the severity and impact of the other interrelated endocrine disorders. The fatigue and other symptoms caused by Addison's disease may be augmented or exacerbated by the other disorders and cause greater limitations than those determined by the ALJ. Because the ALJ failed to discuss the impact of the other endocrine disorders, there is no basis for the Court to conclude that the ALJ adequately considered their combined effect in determining Mr. Campbell's RFC.

The ALJ's failure to consider all of the endocrine disorders cannot be deemed harmless. The record shows the ALJ did not consider how the combination of all Mr. Campbell's

REPORT AND RECOMMENDATION - 5

endocrine disorders would affect his RFC to perform work.  *See Id*.  Consequently there is no basis to conclude that the ALJ's determination of Mr. Campbell's RFC accurately and fully accounted for all of his limitations as required by SSR 96-8p, or that the hypothetical questions posed to the VE accounted for all of Mr. Campbell's limitations.

In sum, the ALJ committed harmful error by failing to assess the severity of all of Mr. Campbell's endocrine disorders at step-two.  This error has harmful because it resulted in a RFC determination that failed to account for the full extent of Mr. Campell's limitations.  This error also affects the ALJ's assessment of Mr. Campbell's testimony and the medical opinions of George Moore, M.D., and James Vandermeer, M.D.  Thus the Court need not address, at this point, the propriety of the ALJ's findings regarding Mr. Campbell's credibility or the medical opinions.  Rather, the Court concludes that it would be appropriate for the ALJ to reevaluate these matters in light of all of Mr. Campbell's severe impairments which includes panhypopituitarism/hypopituitarism, hypothyroidism, hypogonadism, and growth hormone deficiency.

The Court also agrees with Mr. Campbell that remanding the matter for further proceedings is the proper remedy in this case.  This is because the impact of all of Mr. Campbell's endocrine disorders is yet to be determined; this is a determination reserved to the Commissioner and not something a District Court should resolve in the first instance on appeal.  *See e.g. Marsh v. Colvin*, No, 12-17014, —F.3d—, 2015 WL 3773004 (9th Cir. June 8, 2015).

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's final decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should reassess all of Mr. Campbell's

endocrine disorders, both alone and in combination, supplement the record as needed, and proceed with the subsequent steps of the disability analysis, including a reevaluation of Mr. Campbell's testimony and the medical opinions of George Moore, M.D., and James Vandermeer, M.D.

A proposed order accompanies this Report and Recommendation.  Any objection to this Report and Recommendation must be filed and served no later than **July 16, 2015.**  If no objections are filed, the Clerk shall note the matter for **July 17, 2015** as ready for the Court's consideration.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed ten pages.  The failure to timely object may affect the right to appeal.

Dated this 2nd day of July, 2015.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 7